In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-3111

PROTECT MARRIAGE ILLINOIS, *et al.*,
    on behalf of themselves and
    all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

DAVID D. ORR, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3835—**Elaine E. Bucklo**, *Judge*.

_____

SUBMITTED AUGUST 23, 2006—DECIDED SEPTEMBER 6, 2006

_____


Before POSNER, MANION, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*.  Illinois law permits "advisory questions" to be placed on the ballot in general elections. Ill. Election Code, art. 28, 10 ILCS 5/28-1 to -13. The advice has no legal force. ILCS 5/28-6(c); *Georges v. Carney*, 691 F.3d 297, 299 (7th Cir. 1982). The plaintiffs want to place on the ballot for the forthcoming elections in November the question whether the Illinois General Assembly should propose to amend the state constitution to provide that in order "to secure and preserve the benefits of mar-

riage for our society and for future generations of children, a marriage between a man and a woman is the only legal union that shall be valid or recognized in this State."

To get an advisory question placed on the ballot, petitions must be signed by registered voters equal in number to at least 8 percent of the votes cast at the last gubernatorial election, and must be submitted to the Board of Elections at least six months before the election. 10 ILCS 5/28-9. This rule required the plaintiffs to collect approximately 283,000 petitions by the deadline. They collected more than 347,000. But state law further requires the Board to compare the signature on a petition with the petitioner's signature on his voter registration card and determine whether the signatures "reasonably compare," and also to compare the address on the petition with the address on the card to determine whether they match. If a sample of comparisons reveals that more than 5 percent of the petitions are invalid, the question is not placed on the ballot. 10 ILCS 5/28-11 to -12. That is what happened here, precipitating this suit which charges that the requirements for getting an advisory question on the Illinois ballot are so onerous that they violate freedom of speech (or of association, or to petition for redress of grievances), equal protection, and due process of law. The district court disagreed and dismissed the suit on the pleadings.

A state no more has a federal constitutional obligation to permit advisory questions on its ballot than it has to permit them to be painted on the walls of the state capitol. *Georges v. Carney*, *supra*, 691 F.3d at 301-02. Except in states that authorize referenda, initiatives, or other modes of direct democracy, the purpose of a ballot is to list candidates for public office rather than to list policy positions or survey public opinion. *Timmons v. Twin Cities Area New Party*, 520

U.S. 351, 363 (1997). The ballot is not a traditional public forum for the expression of ideas and opinions, like streets or parks, to which reasonable access must be given to people who want to engage in political and other protected expression. The fact that a public facility *could* be used for political speech doesn't require that it be made available for such use. A publicly owned theater doesn't have to be thrown open for political rallies. See *Hotel Employees & Restaurant Employees Union v. City of New York Department of Parks & Recreation*, 311 F.3d 534, 550-54 (2d Cir. 2002). A state can operate schools without having to throw the classrooms open for such rallies, either. *Perry Education. Ass'n v. Perry Local Educators' Assn*, 460 U.S. 37, 47 (1983). Likewise a state can hold elections without having to permit political or commercial advertising to be affixed to the ballot. Cf. *Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974). Illinois is the only state that permits ballots to include advisory questions submitted by citizens (as distinct from officials) and no one supposes (unless perhaps it is these plaintiffs) that the other 49 states are violating the Constitution.

If a state can thus ban advisory questions from the ballot altogether, it can impose requirements designed to avoid ballot clutter, provided the requirements are not jiggered in a way that discriminates against particular advocates or viewpoints. There is no suggestion of that here. Nor is any objective method suggested for trading off the benefits of advisory questions as modes of expression against the costs in making ballots unwieldy and distracting voters from their main function, which is to vote for candidates.

Even if as we do not believe Illinois is required by the First Amendment to impose only limitations that we

would deem reasonable on access to the ballot for political speech, we are given no grounds for thinking that 8 percent of the votes cast in a previous election is an unreasonably high percentage given the state's undoubted interest in sparing the voter a ballot as long as Rip Van Winkle's beard. The "butterfly ballot" that caused such chaos in the 2000 Presidential election in Palm Beach County, Florida, shows how hard it is to make an overlong ballot intelligible to the voter.

The plaintiffs also complain about the further requirement that all petitions of individuals in the same election district be combined and attached to a separate sheet, to facilitate checking the signatures against the voter registration cards, which are kept in the election board of each district. The convenience served by the requirement is obvious but the plaintiffs complain that it might require each of their canvassers to carry 110 sheets to each location (church, stadium, etc.) in which the canvasser seeks petitioners, because there are 110 election districts in the state. But there are few locations in which people from all 110 districts, or indeed from more than a small fraction of that number, congregate. Anyway, while the canvasser could carry with him on his forays blank sheets of paper he wouldn't need 110 of them on which to write the number of the district when he encounters someone from a different part of the state, he needn't. He need only note the petitioner's address (which, remember, must appear on the petition) and then, back at canvassing headquarters, sort the petitions by district and attach all the petitions from the same district to a sheet.

The 5 percent validity requirement is also reasonable. If sampling reveals a high incidence of fraud, the chances are that even more of the petitions have fraudulent signatures than the ones that were detected, but that those frauds escaped detection because the signatures on those petitions were forged more deftly. Of course, false positives—signatures mistakenly deemed fraudulent by the election office's staff—are possible as well. But they presumably would be challenged by the proponent of the advisory question, in this case Protect Marriage Illinois, as the proponent is authorized to do (as we are about to see).

The plaintiffs point us to *Meyer v. Grant*, 486 U.S. 414 (1988), where the Supreme Court held that Colorado, which authorizes the initiative (that is, a ballot proposal that if supported by a majority of the voters becomes a law, bypassing the legislature), could not constitutionally forbid proponents to pay the canvassers. The Court made clear, however, that the state was free not only to impose a percentage requirement for ballot eligibility but also to adopt strict measures for preventing the forging of signatures. It was in light of these controls that the Court concluded that the criminalization of paid canvassers was an undue further burden on the initiative process. *Id*. at 425-28. Another superfluous restriction on Colorado's initiative process—requiring that the canvassers be registered voters—was struck down on similar grounds in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999).

People who go about asking voters to sign petitions in support of proposed laws are engaged in political speech, as in the *Meyer* and *Buckley* cases, and a state cannot tax speakers without a compelling reason. Illinois places no limitations on petitions asking legislators to oppose homo-

sexual marriage. Ballot access is another matter. It must be tightly regulated for the protection of the democratic process. This is true even when the regulation concerns the listing of candidates. A state is not required to list everyone who wants to stand for office, for then ballots would be the size of telephone books. It can impose reasonable restrictions on access, as by requiring, just as in this case, that the would-be candidate demonstrate significant support for his candidacy by submitting thousands (or, depending on the size of the electorate, tens or even hundreds of thousands) of petitions in order to prevent the voter confusion that would be engendered by too long a ballot. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986); *American Party of Texas v. White*, 415 U.S. 767, 782 (1974); *Storer v. Brown*, 415 U.S. 724, 732, (1974): *Jenness v. Fortson*, 403 U.S. 431, 442 (1970); *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 774 (7th Cir. 1997). Equally can states that permit initiatives or referenda place reasonable restrictions (as the Court acknowledged in *Meyer*) on the use of these methods of putting public issues before the electorate. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993).

The plaintiffs further argue that Illinois has denied them the equal protection of the laws by allowing a candidate to be listed on the ballot if he has petitions signed "by 1% of the number of voters who voted in the next preceding Statewide general election or 25,000 qualified voters of the State, whichever is less," 10 ILCS 5/10-3—a much lower percentage than required to get an advisory question on the ballot (though percentages higher than 1 percent are required for some offices). But the difference is warranted by the fact that the primary purpose of the ballot is to list candidates rather than questions, each of which takes up

more space on the ballot than the name, party affiliation, and office sought of a candidate.

To demonstrate, finally, a denial of due process, the plaintiffs point out that there is no procedure by which an individual petitioner whose petition was struck because the signature was invalid can challenge the strike. But what is required in the name of due process depends, as the Supreme Court made clear in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), on the costs as well as the benefits of process. See also *Wilkinson v. Austin*, 125 S. Ct. 2384, 2395 (2005); *Holly v. Wolfolk*, 415 F.3d 678, 680-81 (7th Cir. 2005) (and cases cited there). The cost of allowing tens of thousands of people to demand a hearing on the validity of their signatures would be disproportionate to the benefits, which would be slight because the state allows the organization orchestrating a campaign to put an advisory question on the ballot, in this case Protect Marriage Illinois, to challenge the disqualification of any petitions. Nor is it clear to us what right of liberty or property (an essential predicate of a due process claim) the plaintiffs have been deprived of by being required to comply with the requirements of state law. *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997); *Biddulph v. Mortham*, 89 F.3d 1491, 1500 (11th Cir. 1996) (per curiam).

No other issue has sufficient merit to warrant discussion. The judgment dismissing the suit is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*