In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3514

THADDEUS JONES, et al.,

*Plaintiffs-Appellants*,

*v.*

MICHELLE MARKIEWICZ-QUALKINBUSH,
et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-08977 — **Robert W. Gettleman**, *Judge*.

SUBMITTED OCTOBER 6, 2016 — DECIDED DECEMBER 2, 2016

Before WOOD, *Chief Judge*, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. This case, which arises out of our motions practice, is an appeal from the denial of a preliminary injunction in a dispute among the parties about the placement of certain referendum propositions on the November ballot.

These propositions principally concern the local mayoral election in Calumet City and term limits on candidates for that office.

Steven Grant and Calumet City Concerned Citizens (together, the "Petition Plaintiffs") sought to place on the ballot a proposition that, if approved by the voters, would impose mayoral term limits. The County Clerk refused to place the proposition on the ballot on the ground that Calumet City's current administration already had placed three other propositions on the ballot, and state law permitted no more than three propositions in any single election.

The City's new ballot initiatives appeared to target specifically Thaddeus Jones, an alderman who had announced he was running for mayor. Mr. Jones therefore also brought suit against the city officials. Together, the Petition Plaintiffs and Mr. Jones (together, the "plaintiffs") sought injunctive relief in the district court, claiming that the actions of the city officials violated the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Constitution of Illinois. The district court denied a preliminary injunction, and the plaintiffs appealed. Because preparations for the election were underway, we granted expedited review and, after considering the submissions of the parties, affirmed summarily the order of the district court. At that time, we also indicated that we would issue an opinion in due course.

# I

# BACKGROUND

## A.

On June 18, 2016, plaintiffs Mr. Grant and Calumet City Concerned Citizens began to circulate a referendum petition to impose mayoral term limits. The petition specifically asked:

> Shall … Calumet City be subject to a term limit prohibiting all people from serving more than three (3) terms of office as Mayor, where a term of office includes partial terms of office of two years or more, including all past terms of office served and any term of office currently being served, effective immediately upon approval and passage of this binding referendum? Yes [or] No.[1]

Notably, if this proposition were approved by the voters, it would have disqualified the incumbent mayor from running for reelection in April 2017.

At the time of the initial circulation of the plaintiffs' petition, the defendant mayor and city council members apparently had not discussed imposing term limits on the mayoral office and had no immediate plans to place any referenda on

---

[1] R.1 at 5, ¶ 19.

the ballot. Referendum propositions had not been used frequently.[2] Nonetheless, on June 23, 2016, the City Council passed a resolution, placing the following propositions on the November 2016 general election ballot:

1.  Shall the City of Calumet City allow taverns (bars) to remain open until 2:00 a.m. on Fridays and Saturdays?[3]

2.  Shall any Calumet City elected official be able to receive two (2) pensions by being allowed to participate in the Illinois Municipal Retirement Fund if they are a member of the Illinois General Assembly Retirement Fund?[4]

3.  Shall the City of Calumet City, Cook County, Illinois, adopt the following term limits for the Office of Mayor to be effective for and applicable to all persons who are candidates for Mayor being elected at the Consolidated Election to be held on April 4, 2017, and subsequent elections: Mayor — no person shall be eligible to seek election to, or hold the office of mayor where that person has held the elected office of either Mayor or Alderman of … Calumet City for [four] or more consecutive full four (4) year

---

[2] Calumet City has only placed four City-Council-Initiated referenda on the ballot in the last twenty-seven years, suggesting that binding referenda are a rarely utilized political tool. *Id.* at 7, ¶ 32.

[3] *Id.* at 7–8, ¶ 33.

[4] *Id.*

terms.[5]

If approved by the voters, the first two propositions would be advisory; the final one would be binding.

On August 25, 2016, the City Council also voted to place three additional referenda questions on the February 28, 2017 primary ballot. The plaintiffs filed their petition with the City Clerk on August 8, 2016. The petition was timely and contained the necessary number of signatures. The County Clerk determined that this proposition could not appear on the ballot because the Illinois Election Code contains a provision, referred to as the "Rule of Three," which reads as follows:

> Irrespective of the method of initiation, not more than 3 public questions … may be submitted to referendum with respect to a political subdivision at the same election.

> If more than 3 propositions are timely initiated or certified for submission at an election with respect to a political subdivision, the first 3 validly initiated, by the filing of a petition or by the adoption of a resolution or ordinance of a political subdivision, as the case may be, shall be printed on the ballot and submitted at that election.

10 ILCS 5/28-1. Therefore, by operation of the Rule of Three, no additional items could be placed on the ballot. The County Clerk did not directly notify the Petition Plaintiffs that their referenda item was blocked.

---

[5] *Id*. at 9, ¶ 41.

Having heard nothing regarding the status of their proposed ballot referendum, the plaintiffs contacted the County Clerk on September 6 to inquire as to the status. They were informed that the referendum had not been certified because it had been preempted by the City Council referenda items under the Rule of Three. The Petition Plaintiffs accordingly brought this action.

Thaddeus Jones, a State Representative and five-term Calumet City Alderman, is the only person to have declared his intention to compete against incumbent Mayor Markiewicz-Qualkinbush in the April election. He also is affected uniquely by two of the City's ballot referenda. First, one proposition asks the voters whether "any Calumet City elected official" should be able to receive two pensions by "being allowed to participate in the Illinois Municipal Retirement Fund if they are a member of the Illinois General Assembly Retirement Fund?"[6] The second question asks whether individuals who have served as "Alderman of the city of Calumet City for [four] or more consecutive full four (4) year terms" should "be eligible to seek election to, or hold the office of, mayor?"[7] As a State Representative and Alderman, Mr. Jones is affected directly by these referenda propositions and would be prohibited from serving as mayor if the propositions were approved. Accordingly, Mr. Jones also brought suit.[8]

---

[6] *Id.* at 7–8, ¶ 33.

[7] *Id.* at 9, ¶ 41.

[8] The initial complaint was brought on behalf of both Mr. Jones and the Petition Plaintiffs. *See id.* at 1.

**B.**

On September 15, 2016, the plaintiffs filed this action. The named defendants included: Michelle Markiewicz-Qualkinbush (the current mayor and candidate for reelection); Nyota Figgs (the city clerk); Ramonde Williams (an alderman); Roger Munda (an alderman); Nick Manousopoulos (an alderman); Samuel Bullocks (an alderman); and David Orr (the Cook County clerk).

The underlying allegations are best understood as consisting of three separate sets of interrelated accusations. First, the Petition Plaintiffs assert that their right to freedom of speech, as protected by the First Amendment, is violated when the Rule of Three is applied on a first-come-first-served basis. Second, Mr. Jones claims that the defendants impermissibly targeted him as a class of one in violation of the Equal Protection Clause and also deprived him of his First Amendment political association rights. Finally, all of the plaintiffs contest the ability of municipalities to amend their officer qualifications at the local level.

On September 16, 2016, the plaintiffs moved for a temporary restraining order or preliminary injunction. On September 19, defendant Mayor Markiewicz-Qualkinbush responded in opposition. The plaintiffs replied on September 21. On September 22, the district court denied the plaintiffs' motion. In an oral ruling, the court emphasized the significance of the plaintiffs' delay, more than two months after receiving notice, as a deciding factor in the case.

## II

## DISCUSSION

We review the district court's denial of a preliminary injunction for abuse of discretion. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 324 (7th Cir. 2015). Legal issues are reviewed de novo. *Id.*

To obtain a preliminary injunction, the plaintiffs must show that (1) they will suffer irreparable harm in the period before final resolution of their claims; (2) traditional legal remedies are inadequate; and (3) the claim has some likelihood of success on the merits. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiffs make this showing, we then will weigh the factors against one another, assessing whether the balance of harms favors them or whether the harm to other parties or the public is sufficiently weighty that the injunction should be denied. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012).

## A.

We turn first to the contentions of the Petition Plaintiffs.

Of the three primary elements needed to warrant a preliminary injunction, the Petition Plaintiffs' probability of success on the merits is the most crucial in this context. The Petition Plaintiffs submit that the Illinois Rule of Three, as applied by Calumet City to block their term-limits proposition, presents exactly the situation that we indicated would pose "serious constitutional issues" in *Georges v. Carney*, 691 F.2d 297, 301 (7th Cir. 1982).

In *Georges*, a group of private citizens wanted the ballot in DuPage County to contain a question regarding nuclear armament in the next general election.[9] Because this question would have no legal effect, it was considered an advisory question under the Illinois Election Code, and the plaintiffs were required to obtain the signatures of twenty-five percent of the registered voters in the subdivision to add the initiative to the ballot. *Id.* at 299. This requirement proved impossible to meet. Nevertheless, we upheld the constitutionality of the Illinois Election Code's provision.

We explained that there is "no constitutional right to use the ballot box as a forum for advocating a policy, … and that Illinois therefore has no constitutional obligation to allow advisory questions to be placed on the ballot." *Id.* at 300. Because Illinois, as a matter of federal constitutional law, could have allowed only binding questions to be placed on the ballot, it made little difference that Illinois only *effectively* barred such propositions by instituting a twenty-five percent threshold that was virtually impossible to meet. *Id.* at 301.

We went on to suggest, however, that "[t]he case would be different" if public bodies submitted advisory propositions for the ballot, "particularly" if, "as a result, the challenged provisions of the Illinois Election Code could be viewed as a device by which the state (or county) was taking sides in the

---

[9] Specifically, the plaintiffs in *Georges v. Carney* sought to add a question asking, "'shall the people of the County of DuPage endorse the call to halt the nuclear arms race and request the DuPage County Board … to adopt an immediate, mutual, and verifiable freeze on all further testing, production and deployment' of Soviet and American nuclear weapons 'followed by reductions of present nuclear weapons?'" 691 F.2d 297, 299 (7th Cir. 1982).

nuclear arms debate." *Id.* Then, we suggested, the case would be analogous to *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975), where a municipally owned theater violated the First Amendment by forbidding the performance of a particular play. *Georges*, 691 F.2d at 301.

Judge Cudahy, writing separately in dissent, stated explicitly that "the three question limit, combined with the first-come-first-served principle and the fact that local governing bodies can put questions on the ballot with a simple resolution,[] makes it both possible and likely that the County Board will preempt the ballot spaces at its whim." *Id.* at 303 (Cudahy, J., dissenting). What troubled Judge Cudahy most was his belief that "the Board [could] render the rights of private citizens who have obtained sufficient signatures, especially those citizens who espouse controversial causes, quite meaningless." *Id.* As an example, Judge Cudahy noted that "in 1980, the County Board met one day prior to the filing deadline for ballot questions and approved, in a span of about fifteen minutes, eleven questions for the November 1980 ballot." *Id.* When the citizens groups brought their petitions in the next day, they learned that there were no available spaces on the ballot. *Id.*

The opinion for the court, as well as the dissent, suggest that the Petition Plaintiffs have at least a colorable First Amendment claim. The Supreme Court repeatedly has held that, even in a public forum, the government may impose restrictions on "the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *E.g.*, *Perry Educ. Ass'n v.*

*Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).[10] In *Georges*, drawing support from the vast majority of states that do not allow citizens to propose ballot initiatives, we held that a ballot is not a protected "public forum." 691 F.2d at 301 (panel opinion). In *Protect Marriage Illinois v. Orr*, 463 F.3d 604 (7th Cir. 2006), we again noted that "[t]he ballot is not a traditional public forum for the expression of ideas and opinions, like streets or parks, to which reasonable access must be given to people who want to engage in political and other protected expression." *Id.* at 606. But we also drew a clear distinction between that case and what the First Amendment still required. We held that, although a state clearly can "impose requirements designed to avoid ballot clutter, … requirements [can]not [be] jiggered in a way that discriminates against particular advocates or viewpoints." *Id.*

Our admonitions in both *Georges* and *Protect Marriage Illinois* make clear that the Petition Plaintiffs' First Amendment argument well may succeed. The Petition Plaintiffs assert that, by interfering and advocating its own ballot initiatives, the City competed with their petition on an uneven playing field. This situation well may have amounted to government censorship because the City used the Rule of Three to "take sides" and limit the debate.[11]

---

[10] *See also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

[11] Appellants' Br. 18. The pagination differs between the electronic and hard copies of the Appellants' Brief. Throughout this document, references to the Appellants' Brief use the electronic pagination.

The district court was aware of the possible legal validity of the Petition Plaintiffs' claim, but the court also well understood that other factors had to be weighed carefully before a preliminary injunction could be granted. The court had to "weigh[] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086. We have described this assessment as employing a sliding scale approach: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). "Once all the equitable factors are before the judge, however, a classic discretionary decision must be made involving how much weight to give individual components of the calculus and to what direction the balance of equity tips." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986). "Ultimately, the district judge has to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Id.*

The Petition Plaintiffs argue that they face irreparable harm because their ballot initiative regarding term limits is meant to affect the April 2017 mayoral election. If we allow this initiative to be excluded, they submit, voters will not have the option to set term limits in advance of the election. On the record before us, we cannot establish with any certainty the validity of this argument. The City already has planned to have a second ballot referendum as part of the primary election on February 28, 2017, and Calumet City's residents may

still be able to vote on the Petition Plaintiffs' proposal prior to the April mayoral election. As noted earlier, the Petition Plaintiffs filed their petition with the City Clerk on August 8, 2016; the City did not add its three ballot referenda to the February ballot until August 25, 2016. Deciding which three referenda have priority for the February ballot requires an application of 10 ILCS 5/28-5's "holdover clause." For reasons that will become apparent shortly, we need not resolve this question of state law today; we merely note that the Petition Plaintiffs still may be able to submit their referendum to voters before a new mayor is elected.

In assessing the balance of harms, the district court thought that the delay in bringing suit was "the most important driver of the decision."[12] It thought that the Petition Plaintiffs' delay created significant harm for the public at large.[13] Illinois prepared its ballots to be sent overseas by September 23, and the state authorized voting by mail and early voting beginning September 29.[14] As we were well past these dates, and citizens of Calumet may well have been voting at the time of our summary affirmance, these interests quite appropriately weighed heavily in the district court's analysis.[15]

---

[12] R.17 at 20.

[13] *Id.* at 24.

[14] State of Illinois, *Election and Campaign Finance Calendar*, at 42–43, available at https://www.elections.il.gov/Downloads/ElectionInformation/ PDF/2016ElectionCalendar.pdf.

[15] *See Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (denying relief where plaintiffs' delay risked "interefer[ing] with the rights of other Indiana citizens, in particular the absentee voters" once ballots had been

We believe that the district court was on solid ground in making this determination. "Laches arises when an unwarranted delay in bringing a suit or otherwise pressing a claim produces prejudice." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (citing *Herman v. City of Chicago*, 870 F.2d 400, 401 (7th Cir. 1989)). The obligation to seek injunctive relief in a timely manner in the election context is hardly a new concept. We previously have suggested that claims must be brought "expeditiously," *id.* (citing *Williams v. Rhodes*, 393 U.S. 23, 34–35 (1968)), to afford the district court "sufficient time in advance of an election to rule without disruption of the electoral cycle," *Gjersten v. Bd. of Election Comm'rs for City of Chicago*, 791 F.2d 472, 479 n.12 (7th Cir. 1986). Of course, "it is not always easy to determine whether the plaintiffs have made a timely attempt to protect their rights." *Id.* "Timeliness must be judged by the knowledge of the plaintiffs as well as the nature of the right involved." *Id.*

Although the Petition Plaintiffs dispute when they first had "knowledge" of their claims, neither party disputes the underlying facts. The plaintiffs first began circulating the proposed referendum petition in the City on Saturday, June 18, 2016.[16] On Monday, June 20, 2016, the City Council directed

---

printed); *see also Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (applying laches where candidate waited two weeks after he knew he would not be listed on ballot to file suit and preliminary work had already been done for election); *McCarthy v. Briscoe*, 539 F.2d 1353, 1354–55 (5th Cir. 1976) (denying application for emergency injunctive relief where entire election process would be disrupted by lawsuit filed on July 30 seeking ballot access to November presidential election).

[16] R.1 at 5, ¶ 19.

the City Clerk to post a notice that a previously unscheduled Committee of the Whole Meeting Ordinance and Resolutions Committee would occur on June 22, 2016. The items on the agenda included the consideration of three resolutions to place three different referenda propositions on the ballot for the November 8, 2016, election.[17]

The next business day, on Tuesday, June 21, 2016, the City Clerk posted an agenda and then a revised agenda for the Regular City Council Meeting scheduled for Thursday, June 23, 2016.[18] The revised agenda added the resolutions to the calendar for the Regular City Council meeting to be held on June 23, 2016. Unlike the agenda for the Committee of the Whole Meeting Ordinance and Resolutions Committee, this new agenda also now advised that the referendum related to Qualifications for Mayor would be binding and slightly changed the language of the City's proposed term limits referendum.[19] On Thursday, June 23, 2016, the City Council meeting occurred. At the meeting, Mr. Jones, a plaintiff in this action, voted against all three resolutions.[20]

The district court reasonably concluded that not only Mr. Jones, but the Petition Plaintiffs, had knowledge of the Council's action. The defendants correctly rely on *Village of Fox River Grove v. Aluminum Coil Anodizing Corporation*, 252

---

[17] *Id.* at 7, ¶ 31.

[18] *Id.* at 8, ¶ 34.

[19] *Id.*

[20] *Id.* at 9, ¶ 42.

N.E.2d 225 (Ill. App. Ct. 1969), for the proposition that pas-
sage and publication of an ordinance is notice to the world of
its existence.[21] The Petition Plaintiffs therefore acquired notice
by June 23, 2016, when the City Council voted to add the three
initiatives to the ballot.[22]

Our conclusion is consistent with both federal and state
law. For example, in the due process context, the Supreme
Court of the United States repeatedly has held that "[a]ll citi-
zens are presumptively charged with knowledge of the law."
*Atkins v. Parker*, 472 U.S. 115, 130 (1985). Moreover, in Illinois,
notice of ordinances is implied upon publication. *People ex rel.
O'Connell v. Read*, 100 N.E. 230, 230–31 (Ill. 1912) (discussing
publication requirements of local ordinance as means to pro-
vide notice); *City of Rockford v. Suski*, 413 N.E.2d 527, 530 (Ill.
App. Ct. 1980) ("[F]ailure of a municipality to prove publica-
tion of an ordinance may render it invalid.").

Moreover, the complaint admits the City Council pub-
lished an agenda on June 21, which described the ballot initi-
atives.[23] The City Council published the minutes from the
same meeting, noting that all three ballot initiatives had
passed.[24] Finally, as we have noted earlier, at least one plain-
tiff, Mr. Jones, was present at the meeting and voted against

---

[21] Appellees' Br. 11.

[22] *See* R.1 at 8, ¶ 35; *id.* at 9, ¶ 37.

[23] *Id.* at 8, ¶ 34.

[24] We may take judicial notice of the City Council's meeting minutes be-
cause they are a document in the public record. *E.g.*, *Pugh v. Tribune Co.*,
521 F.3d 686, 691 n.2 (7th Cir. 2008) (discussing that taking judicial notice

the measure. There is ample evidence to conclude that the plaintiffs knew that the Rule of Three displaced their ballot initiative by the end of June, but delayed in filing this action until September 15.[25]

Given these facts, we do not think that the district court was obliged to accept the plaintiffs' assertion that they lacked actual knowledge until early September because the City Clerk had a duty to inform them of the other initiatives on the ballot.[26] As a practical matter, regardless of whether the City Clerk should have provided additional notice, the district court was entitled to conclude that the plaintiffs knew of the other three ballot initiatives on June 23 and, therefore, could have acted sooner. The district court was therefore on

---

at motion to dismiss does not convert the motion into a motion for summary judgment). The meeting minutes can be found at http://calumetcity.org/wp-content/uploads/2012/03/Agenda-Regular-Meeting-June-23-20161.pdf.

[25] The plaintiffs' delay becomes even clearer once we fully consider that Mr. Jones, a co-plaintiff, was present and voted against the initiatives. R.1 at 9, ¶ 42. Although the plaintiffs reject our ability to impute this knowledge to all plaintiffs, the plaintiffs are unable to cite a single authority to support this position. Instead, the plaintiffs assert that the district court confused the different causes of actions, and the different relief, sought by the Petition Plaintiffs and Mr. Jones. This argument fails because, as discussed above, the Petition Plaintiffs had knowledge by, at least, June 23.

[26] Appellants' Br. 21; R.13 at 2. We need not decide definitively whether the Clerk had such an obligation under 10 ILCS 5/28-5.

solid ground in concluding that the plaintiffs had notice of the ballot initiatives on or about June 23.[27]

In sum, the district court certainly did not abuse its discretion in determining that the harm to the electoral system caused by the plaintiffs' delay outweighed any countervailing harm to the Petition Plaintiffs.

**B.**

We turn now to Mr. Jones's individual equal protection and freedom of political association claims. With respect to the equal protection claim, he contends that the proposition placed on the ballot by the defendants impermissibly targets him as a "class of one" in violation of the Equal Protection Clause of the Fourteenth Amendment.

Although Mr. Jones's claims are certainly colorable, they were not ripe for adjudication when this case was decided. It is, of course, a fundamental principle that "[f]ederal courts … cannot … advise … on the constitutionality of proposed legislation." *Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989); *see also Muskrat v. United States*, 219 U.S. 346, 359–60 (1911) (stating that when "presented a question involving the validity of any act of any legislature … the court must … determine

---

[27] The same is true for the plaintiffs' contention that Calumet City lacked the ability to change the City's mayoral qualifications via ballot referenda. This claim also is blocked by the same delays as those discussed above because, like the freedom of speech claim, the plaintiffs knew the content of the ballot initiatives on or about June 23. Their delay in asking for a preliminary injunction was far too long, and the equities require dismissal.

whether … [there is a] real, earnest, and vital controversy between individuals"). A ballot initiative is nothing more than proposed legislation removed from the legislature and placed in the hands of the voting public. Mr. Jones could not challenge the constitutionality of the propositions unless and until they were enacted by the referendum process.[28]

## Conclusion

The district court did not abuse its discretion in denying the preliminary injunction. The record evidence supports the district court's determination that the plaintiffs' request for such relief was not timely and that considerable harm would have been visited on the electoral system if the requested relief had been granted. Moreover, Mr. Jones's individual claims were not ripe for adjudication at the time that we rendered our decision.

AFFIRMED

---

[28] While this circuit has not addressed this exact issue in the past, other jurisdictions have held that challenges to proposed ballot referenda are non-justiciable. For example, in *Slack v. City of Salem*, the Illinois Supreme Court refused to hear a case "to restrain the holding of a referendum election to approve … the issuance of revenue bonds" because it "ha[d] no power to render advisory opinions, and until the legislative process [was] concluded, there [was] no controversy that [was] ripe for a declaratory judgment." 201 N.E.2d 119, 120–21 (Ill. 1964). Similarly, the District of Nevada has noted that "federal courts have … held pre-election challenges to proposed ballot measures to be unripe." *Nevada Rest. Ass'n v. Pest Comm.*, No. 3:08-CV-00118-BES-VPC, 2008 WL 8225546, at *3 (D. Nev. July 15, 2008).