In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1874

JASON GONZALES,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. MADIGAN, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 7915 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED NOVEMBER 10, 2020 — DECIDED MARCH 8, 2021

_____

Before EASTERBROOK, KANNE, and SCUDDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Michael Madigan was elected to the Illinois House of Representatives at age 28 in November 1970 and re-elected to 25 additional two-year terms. He became Speaker of the House in 1983, a position he retained with the exception of two years when the Republican Party controlled the House. He became Committeeman of the 13th Ward Democratic Organization in 1969 and Chair-

man of the state's Democratic Party in 1998. In January 2021 he withdrew from the race to be reelected as Speaker. The next month he resigned his seat in the House and his role as Chairman of the statewide party, though he retains his post in the 13th Ward. His 36 years as Speaker make him the longest-serving head of any state or federal legislative body in the history of the United States.

Madigan comfortably won both primary and general elections for his entire political career. Most years he ran unopposed in the Democratic primary; some years he ran unopposed in the general election. When he faced opposition, the races were not close. Which makes it hard to understand the conduct he is accused of in this suit.

Four candidates were on the ballot for the Democratic primary in spring 2016: Michael Madigan, Jason Gonzales, Grasiela Rodriguez, and Joe G. Barboza. Madigan won with 65% of the votes cast; Gonzales received 27%, Rodriguez 6%, and Barboza 2%. Gonzales contends in this suit under 42 U.S.C. §1983 that Rodriguez and Barboza were stooges put on the ballot by Madigan's allies to divide the Hispanic vote and ensure Madigan's victory. The effort was hardly necessary, since if every non-Madigan vote had gone to Gonzales he still would have lost in a landslide. Nonetheless, Gonzales contends, the appearance of two candidates who served only as distractors violated the Equal Protection Clause in the Fourteenth Amendment and entitles him to damages (perhaps represented by the expenses of his failed run). Gonzales relies on *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973), which held that a stalking-horse candidacy, in which the nominal contestant secretly planned to withdraw after winning the primary and permit a party committee to name the

candidate for the general election, could in principle violate the Equal Protection Clause.

In the district court and this court the parties have debated quite a few issues, such as whether the margin of Madigan's victory in 2016 defeats the claim and whether Gonzales has demonstrated that state action is behind the appearance of Rodriguez and Barboza on the ballot. (Section 1983 is limited to actions under color of state law.) The district judge ultimately held a single issue dispositive: whether, if Madigan was behind Rodriguez and Barboza (he denies having any role), that sponsorship was a secret. The district judge thought that the key to the holding of *Smith* was the voters' ignorance of the stalking horse's plan to facilitate the appointment of someone who was not on the ballot. Gonzales smelled a rat from the start and made that known to the electorate, which swept Madigan back into office anyway. An editorial in the *Chicago Sun-Times* agreed with Gonzales about the provenance of the Rodriguez and Barboza candidacies, so the voters did not have to take his word for it. *Our Endorsements for the Illinois House*, CHICAGO SUN-TIMES (Feb. 19, 2016). Because the voters were not deceived, the judge held, the conditions leading to liability in *Smith* have not been satisfied. The court granted summary judgment against Gonzales. 403 F. Supp. 3d 670 (N.D. Ill. 2019).

Gonzales's response has been to file an appellate brief that treats the district judge as an extra defendant. According to Gonzales, the judge personally violated the First Amendment by penalizing Gonzales's campaign speech. That utterly misunderstands the burdens of production and persuasion in litigation. To prevail, any litigant must establish the elements of a valid claim. One aspect of that claim, under the

analysis of *Smith*, is that the voters have been hoodwinked. Gonzales's own speeches and ads during his campaign show that the voters were not hoodwinked. End of case. Recognizing this does not penalize anyone's speech. It shows, rather, that Gonzalez did not satisfy the governing legal standard.

Imagine a contract case. Green promises to deliver a ton of steel to Perkins, who files suit claiming that Green did not perform. Green responds by producing a written acknowledgment by Perkins that the steel was received in good condition. Perkins loses—not because his speech (the acknowledgment) has been penalized, but because evidence shows that his claim of nondelivery is false. Likewise if Perkins signs a release, which Green tenders as an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Speech, including statements in depositions and answers to interrogatories, often affects the outcome of litigation, but a judge who takes account of speech that proves or refutes the plaintiff's claim does not violate the First Amendment.

Gonzales also accuses the district judge of violating the Due Process Clause and the Equal Protection Clause. Those assertions—advanced without elaboration in one-half page of the appellate brief—do not require independent analysis.

That's all we need to say, but we cannot close without remarking that we have applied *Smith* as written without endorsing its reasoning or disposition. The opinion in *Smith* does not explain *why* political deceit violates the Equal Protection Clause. We mean no disrespect to politicians in recognizing that many false statements are made during political campaigns and that many a stratagem that one side deems clever will be seen by the opposition as a dirty trick. Opposing political figures may brand true statements as

false and honest campaigning as a rotten subterfuge. Voters rather than judges must decide when one side has gone overboard. We explained why in *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 939 (7th Cir. 2018):

> Politics is a rough-and-tumble game, where hurt feelings and thwarted ambitions are a necessary part of robust debate. See *Manley v. Law*, 889 F.3d 885 (7th Cir. 2018). It is impossible to imagine the judiciary attempting to decide when a politically retaliatory step goes "too far" without displacing the people's right to govern their own affairs and making the judiciary just another political tool for one faction to wield against its rivals. The right response is political … . … Any effort by the judiciary to stop one politician from proposing and advocating steps that injure another politician would do more to violate the First Amendment (the right to advocate one's view of good policy is the core of free speech) than to vindicate the Equal Protection Clause.

Gonzales told the voters that (in his view) Madigan had played a dirty trick. The electorate nonetheless sided with Madigan. The Constitution does not authorize the judiciary to upset that outcome or to penalize a politician for employing a shady strategy that voters tolerate.

*Smith* was a bolt from the blue. It does not have any predecessors that we could find. Nor has it had any successors. *Rudisill v. Flynn*, 619 F.2d 692 (7th Cir. 1980), pretty much confines it to its facts. None of our decisions since *Rudisill* has relied on *Smith* to hold that any candidate's mischief during a contested election violates the Equal Protection Clause. As far as we can tell, none of the other courts of appeals has ever reached a decision similar to *Smith*; certainly none has ever relied on *Smith* to vindicate one politician's view that an opponent overstepped the bounds of propriety. See, e.g., *Pignanelli v. Pueblo School District No. 60*, 540 F.3d 1213, 1219 (10th Cir. 2008) (distinguishing *Smith* because

"voters had a real choice between real candidates" in a school board election). We need not decide today whether *Smith* should be overruled, but we are confident that it should not be extended.

AFFIRMED