2022 IL App (4th) 220976

NO. 4-22-0976

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 21, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KARRIE E. ALMS and JESSICA THOMAS, | ) | Appeal from the |
|     Plaintiffs-Appellants, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| THE PEORIA COUNTY ELECTION COMMISSION; | ) | No. 22CH28. |
| JAMES MANNING, in His Capacity as Member and | ) | |
| Chair of the Peoria County Election Commission; MATT | ) | |
| BARTOLO, in His Capacity as Member of the Peoria | ) | |
| County Election Commission; VALERIE TIMMS, in Her | ) | |
| Capacity as Member of the Peoria County Election | ) | |
| Commission; JEANNE WILLIAMSON, in Her Capacity | ) | |
| as Member of the Peoria County Election Commission; | ) | |
| and RYAN BRADY, in His Capacity as Member of the | ) | Honorable |
| Peoria County Election Commission, | ) | James A. Mack, |
|     Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Cavanagh and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs, Karrie E. Alms and Jessica Thomas, appeal from the trial court's denial

of their second motion for preliminary injunction, which sought to prohibit defendants—the

Peoria County Election Commission and James Manning, Matt Bartolo, Valerie Timms, Jeanne

Williamson, and Ryan Brady, in their capacities as members of the Peoria County Election

Commission (collectively the Election Commission)—from counting the ballots and certifying

and declaring the result of a referendum on the November 8, 2022, General Election (November

8 election) ballot in Peoria County. The challenged referendum asked voters whether Peoria

County should eliminate the internal office of county auditor.

¶ 2 While this appeal was pending, the November 8 election was held, and the unofficial tally indicated that the voters approved the referendum. Pursuant to the Election Code (10 ILCS 5/22-17(a) (West 2020)), the last day to canvass the results of the referendum was November 29, 2022. Thus, due to the time constraints attendant to this appeal, we entered an order affirming the trial court's judgment on November 21, 2022. We indicated in our order that we would issue a disposition in due course explaining our reasoning. In accordance with that order, we now explain our reasoning for affirming the trial court's denial of plaintiffs' second motion for preliminary injunction.

¶ 3 I. BACKGROUND

¶ 4 On August 11, 2022, the Peoria County Board (Board) approved a resolution to place a referendum on the November 8 election ballot in Peoria County. The referendum read:

"Shall Peoria County eliminate the internal Office of County Auditor when Peoria County already has an external Auditor as required by state law? This would be a cost savings of approximately $150,000 annually."

¶ 5 On August 19, 2022, Peoria County Clerk Rachel Parker intended to submit the approved referendum to the Election Commission, but she inadvertently sent an incorrect draft version that had different language and was never voted on or accepted by the Board. On August 26, 2022, Parker learned of the mistake and submitted the correct version to the Election Commission. The resolution bore a stamp, noting that it was filed with the Election Commission on August 26, 2022. Under the stamp was a handwritten note that stated: "*nunc pro tunc* for August 22, 2022 at 2:10 p.m."

¶ 6 On September 15, 2022, Alms and Thomas (the current Peoria county auditor) filed a complaint for injunctive and declaratory relief challenging the referendum. In count I,

plaintiffs alleged that the referendum could not appear on the November 8 election ballot because it was not timely filed with the Election Commission. In count II, plaintiffs alleged that the language of the referendum was not fair and neutral. In count III, plaintiffs asserted that, if the referendum were permitted to appear on the ballot, then the draft of the referendum that was inadvertently sent to the Election Commission should also appear on the ballot. (After plaintiffs filed their complaint, the ballots were printed with only the Board-approved referendum language. Plaintiffs thus acknowledge that their argument in count III is now moot.)

¶ 7 On September 21, 2022, plaintiffs filed a motion for preliminary injunction and a memorandum of law in support of the motion. Plaintiffs contended that, until the trial court entered a final judgment, the Election Commission should be barred "from printing the ballot *** and from conducting [the] referendum [*sic*] at the" November 8 election.

¶ 8 In their supporting memorandum, plaintiffs argued that an injunction should be entered because they were likely to succeed on the merits. As to their claim that the referendum was untimely, plaintiffs noted that the Election Code provides that public questions "must be adopted not less than 79 days before a regularly scheduled election to be eligible for submission on the ballot at such election." 10 ILCS 5/28-2(c) (West 2020). Accordingly, plaintiffs argued, the Board was required to file the referendum with the Election Commission by August 22, 2022, but the Board did not do so until August 26, 2022—only 75 days before the November 8 election. Plaintiffs also contended that the Board's apparent attempt to cure the tardy filing with a "*nunc pro tunc*" notation did not render it timely.

¶ 9 Regarding their claim that the wording of the referendum was not fair and neutral, plaintiffs argued that its language improperly advocated for a particular result in violation of the free and equal clause of the Illinois Constitution (Ill. Const. 1970, art. III, § 3) and section 9-25.1

of the Election Code (10 ILCS 5/9-25.1 (West 2020)), which prohibits public funds from being used to urge an elector to vote for or against a candidate or proposition.

¶ 10　　　　　Plaintiffs further argued that, as voters, they had the right to a free and fair election and that there was no remedy beyond an injunction that would protect that right. Additionally, they noted, without additional explanation, that absent an injunction, their "right to a fair election and one conducted in accordance with the statutory requirements [would be] harmed." Plaintiffs also argued that a balancing of the equities favored relief because, without preliminary injunctive relief, they "would be denied participating in a free and fair election."

¶ 11　　　　　On September 29, 2022, the Election Commission filed its response to plaintiffs' motion for preliminary injunction. The Election Commission first contested that plaintiffs would succeed on the merits. It argued that the referendum was timely because section 28-2(c) required only that the Board "adopt"—as opposed to "file"—the resolution approving the referendum not less than 79 days before the election. According to the Election Commission, because the Board approved the resolution to place the referendum on the ballot on August 11, 2022, the referendum was timely adopted. The Election Commission presented the affidavit of Parker in response to plaintiffs' claim that the resolution's "*nunc pro tunc*" notation was an "attempt to cure" a late filing. In Parker's affidavit, she explained that the Board approved the referendum on August 11, 2022, and although she intended, on August 19, 2022, to send that referendum to the Election Commission, she inadvertently sent a draft version of the referendum that was never voted on or approved by the Board. Parker stated that, when she learned of the error, she submitted the correct version to the Election Commission. The Election Commission thus argued that the "*nunc pro tunc*" notation merely corrected a clerical error, and in any event, the referendum was timely adopted on August 11, 2022. As to plaintiffs' claim that the referendum

language was biased, the Election Commission argued that the language was neither inflammatory nor the type of language typically prohibited.

¶ 12 The Election Commission also argued that plaintiffs would not suffer irreparable harm if the referendum passed because plaintiffs had a remedial process for challenging the referendum pursuant to section 23-24 of the Election Code. See 10 ILCS 5/23-24 (West 2020) (stating for questions of public policy submitted to voters of a political subdivision or district, "any 5 electors of *** the political subdivision or district *** may contest the results of any such election by filing a written statement in the circuit court within 30 days after the result of the election shall have been determined"). Finally, the Election Commission argued that, since voting had already begun, the burden on defendants if an injunction were granted would substantially outweigh the burden on plaintiffs if the injunction were denied.

¶ 13 On September 30, 2022, following a hearing, the trial court denied plaintiffs' motion for preliminary injunction. The trial court explained that, because the election had already begun, it was impossible to prohibit the printing of the ballots as requested by plaintiffs. Additionally, the court noted that there was "no way to conclude this prior to the election because *** the election is already underway," and "[a]ll of the arguments that plaintiffs make can be addressed after the election if they need be." The court noted that plaintiffs' motion for a preliminary injunction included no request to prohibit the counting of ballots and if they sought such relief in a future motion for preliminary injunction, the court would address it then.

¶ 14 On October 11, 2022, plaintiffs filed their second motion for preliminary injunction and a memorandum of law in support of the motion. The second motion for preliminary injunction raised the same arguments as the first motion for preliminary injunction but asked for different relief. Specifically, plaintiffs asked the trial court to "issue a Preliminary

Injunction barring the Election Commission from conducting the referendum [*sic*] at the [November 8 election], including, but not limited to, counting the ballots, canvassing the election, and certifying and declaring the results of the referendum."

¶ 15        On October 18, 2022, the Election Commission filed its response. The Election Commission reasserted its arguments that plaintiffs failed to show a likelihood of success on the merits, that plaintiffs did not face irreparable harm, and that a balancing of the harms established that an injunction should not be granted.

¶ 16        The court held a hearing on the second motion for preliminary injunction on October 19, 2022. At the hearing, plaintiffs argued that they faced "substantial prejudice" if the results of the referendum were announced before the merits were ruled upon. Specifically, plaintiffs argued that, should they win "on the legal merits and the results get released, that would totally undermine [the auditor's] ability to exercise her statutorily granted powers," and cause confusion for the public. Plaintiffs then asserted that relief was warranted because the referendum was not timely filed with the Election Commission and because the language of the referendum improperly (1) suggested to the public that a "[p]rivate external auditor is exactly the same as the county auditor" and (2) suggested, without support, that elimination of the office would lead to "substantial savings" for Peoria County.

¶ 17        The Election Commission responded that plaintiffs presented no authority that the trial court could "stop an election and take this issue from the voters." The Election Commission also contended that the language of the referendum was not biased and that the referendum was timely because the Board approved it on August 11, 2022. Finally, the Election Commission argued that the Election Code provided postelection remedies and that plaintiffs would not suffer irreparable harm.

¶ 18          Following argument, the trial court denied plaintiffs' second motion for preliminary injunction. The trial court determined that plaintiffs failed to raise a fair question as to whether they would succeed on the merits. Specifically, as to plaintiffs' argument that the referendum was untimely, the court explained that section 28-2(c) of the Election Code "clearly says 'adopted.' It doesn't mean that it has to be filed" 79 days before the November 8 election. As to plaintiffs' claim that the referendum language was biased, the court explained that, while the language of the referendum looked "suspect," "that doesn't invalidate it. There's nothing out there that invalidates language that is biased or one-sided." The court noted that none of the alleged harms plaintiffs referenced at the hearing were raised in their written argument and therefore found that plaintiffs did not raise a fair question that they would suffer irreparable harm.

¶ 19          On October 31, 2022, plaintiffs filed this interlocutory appeal.

¶ 20                                        II. ANALYSIS

¶ 21          Plaintiffs argue that the trial court erred in denying their second motion for preliminary injunction because they established all requirements for a preliminary injunction. The Election Commission argues that plaintiffs failed to make the necessary showings to be entitled to a preliminary injunction.

¶ 22          Initially, we consider whether plaintiffs' claim that they are entitled to a preliminary injunction is moot because, while this appeal was pending, the November 8 election occurred, the referendum was approved by the voters, and the Election Commission made the result of the referendum public. In general, we will not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *Staake v. Department of Corrections*, 2022 IL App (4th) 210071, ¶ 30. "An issue is

- 7 -

moot when an actual controversy no longer exists between the parties for which relief can be granted." *Staake*, 2022 IL App (4th) 210071, ¶ 30.

¶ 23    In their second motion for preliminary injunction, plaintiffs sought to enjoin the Election Commission from "canvassing \*\*\*, certifying or declaring the results" of the November 8 election. At the time we issued our order affirming the trial court on November 21, 2022, the ballots of the November 8 election had been counted, and the result of the referendum had been declared. However, the Election Commission had not yet certified the results. Accordingly, we concluded that this case was not moot. Thus, we proceed to the merits of this appeal.

¶ 24    Generally, this court reviews a trial court's grant or denial of a preliminary injunction for an abuse of discretion. *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010). A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would adopt the court's view. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378. However, where a court makes no factual findings and rules on a question of law, our review is *de novo*. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378. In denying plaintiffs' second motion for preliminary injunction, the trial court did not make any factual findings and instead made rulings on questions of law. Accordingly, our review is *de novo*.

¶ 25    A preliminary injunction preserves the status quo until the merits of the case are decided. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378. Because a preliminary injunction is an extraordinary remedy, it should only be granted in situations of extreme emergency or where serious harm would result if the preliminary injunction were not issued. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378. To obtain a preliminary injunction, the moving party must show (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an

injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378. The moving party must raise a fair question as to all four elements to obtain an injunction. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378. A party's mere opinion, conclusion, or belief is insufficient. *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 37. Because all four elements must be met, the failure to establish any one of them requires the denial of the preliminary injunction. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 40.

¶ 26 If all elements of a preliminary injunction are met, the court must also balance the equities associated with the claim. *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶ 68. When balancing the equities, the court must weigh the benefits of granting an injunction against the possible injury to the opposing party from the injunction. *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶ 68. The moving party must show that he or she would suffer more harm without an injunction than the nonmoving party would suffer if the injunction were granted. *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶ 68. Additionally, the court should consider the effect of the injunction on the public. *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶ 68.

¶ 27 Plaintiffs argue that the trial court erred in denying their request for injunctive relief because they established all four elements necessary for a preliminary injunction. According to plaintiffs, there would be "no harm to the Election Commission" if such relief were granted, but without such relief, plaintiffs "would be denied participating in a free and fair election." This argument is unavailing. As we explain below, we conclude that plaintiffs forfeited their argument that they raised a fair question as to irreparable harm and, in any event, failed to raise a fair question as to the likelihood of success on the merits.

¶ 28      Initially, plaintiffs have forfeited their argument that they raised a fair question as to the irreparable injury element. Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), the argument section in an appellant's brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Reviewing courts are not depositories where litigants may dump the burden of argument and research; courts are entitled to have the issues clearly defined and a cohesive legal argument presented. *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 82. Where an appellant fails to present a cogent argument, that argument is forfeited. See *Hundley*, 2019 IL App (4th) 180380, ¶ 82 (appellant's failure to present cogent argument in brief rendered argument forfeited).

¶ 29      Here, the entirety of plaintiffs' argument regarding irreparable harm in their opening brief reads:

> "As voters, Plaintiffs have the right to a free and fair election, as demonstrated above. There simply is no other remedy available to protect Plaintiffs' interests, and without the requested injunction, Plaintiffs' right to a fair election and one conducted in accordance with the statutory requirements is harmed."

¶ 30      Plaintiffs provide no explanation beyond this conclusory claim; as such, they have not presented a cogent legal argument as to how they raised a fair question regarding irreparable harm. Accordingly, the argument is forfeited. See *Maday*, 2018 IL App (1st) 180294, ¶ 50 (single conclusory sentence in brief without argument in support violated Rule 341(h)(7) such that the argument was forfeited).

¶ 31      We note that, in their reply brief, plaintiffs argue that they will suffer irreparable harm because, since the referendum has passed, they now have "a newly ascertainable right at

issue: the elimination of the Auditor's office." Plaintiffs mention that the Board announced in a November 11, 2022, letter that it will eliminate the office on November 30, 2022. (That letter was presented to this court in a "reply appendix" attached to plaintiffs' reply brief.) Plaintiffs argue that elimination of the office will impermissibly shorten the term of the auditor, in violation of their right to a free and fair election and their right to vote. However, this argument was not raised in the trial court, and it is raised for the first time on appeal in their reply brief. As a result, the trial court had no opportunity to consider this argument in making its ruling, and the Election Commission has had no opportunity to respond to the argument on appeal. Arguments may not be raised for the first time in a reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Thus, plaintiffs have also forfeited this argument. See *People ex rel. Ballard v. Niekamp*, 2011 IL App (4th) 100796, ¶¶ 40-41 (defendant forfeited argument that was not raised in the trial court); *Village of Downers Grove v. Village Square III Condominium Ass'n*, 2022 IL App (2d) 210098, ¶ 93 (defendant forfeited argument raised for the first time in its reply brief).

¶ 32        Additionally, this argument relies on information in a letter that was sent after the trial court denied the second motion for preliminary injunction and after the referendum passed. The letter was never before the trial court. Although plaintiffs ask this court to take judicial notice of the letter, judicial notice cannot be used to introduce new evidentiary material that was not considered by the fact finder. *People v. Cline*, 2022 IL 126383, ¶ 32. Similarly, although plaintiffs included the letter in the "reply appendix" attached to their reply brief, we may not consider it. See *In re R.M.*, 2022 IL App (4th) 210426, ¶ 21 (noting that attachments to briefs cannot be used to supplement the record on appeal, and revieing court cannot consider evidence that is not part of the record). As such, we must ignore the reply appendix.

¶ 33        Even if we were to ignore the aforementioned forfeitures, we would conclude that plaintiffs did not raise a fair question as to irreparable injury. The passage quoted from plaintiffs' opening brief regarding irreparable injury (*supra* ¶ 29) appears verbatim in their memorandum in support of their second motion for preliminary injunction. Plaintiffs presented no explanation or argument beyond that conclusory statement to support their claim of irreparable injury in either their motion or supporting memorandum. Nor did plaintiffs provide any evidence in support of their conclusory claim at the hearing. In seeking a preliminary injunction, a plaintiff must specify all facts necessary to justify the unusual relief sought. *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 608 (1986). "Such facts must be alleged with certainty and precision; it is incumbent upon the plaintiff to allege, as well, in particular terms the irreparable harm. Mere conclusions are inadequate." *Illinois Municipal League*, 140 Ill. App. 3d at 608. Plaintiffs failed to meet that standard here, as they raised nothing more than an unparticularized, conclusory assertion that they faced injury if a preliminary injunction were not granted.

¶ 34        Finally, even if we were to consider the argument regarding the Board's letter, raised by plaintiffs for the first time in their reply brief, plaintiffs still would not have raised a fair question regarding irreparable harm. Particularly, their claim that they face irreparable harm is undercut by their own argument that the impending elimination of the auditor's office, as announced by the Board in a November 11, 2022, letter, implicates a "newly ascertain[ed]" right. As plaintiffs contend that their "newly ascertain[ed]" right was implicated *after* the referendum passed and *after* the Board announced its intention to eliminate the office, plaintiffs necessarily did not raise a fair question in the trial court that that right needed protecting or that they faced irreparable harm.

¶ 35     As to plaintiffs' argument as to the likelihood of success on the merits, we conclude that they failed to raise a fair question. Plaintiffs argue that the referendum was improper because (1) it was not timely filed with the Election Commission and (2) the language of the referendum was "argumentative" and "slanted."

¶ 36     Regarding plaintiffs' timeliness argument, they contend that the referendum should not have been placed on the November 8 election ballot because the Board filed the referendum with the Election Commission on August 26, 2022, which was after the deadline prescribed by section 28-2(c) of the Election Code. They further contend that, although that filing included the handwritten note, "*nunc pro tunc* for August 22, 2022 at 2:10 p.m.," that notation did not render the filing timely. The Election Commission responds that section 28-2(c) requires only that a referendum be *adopted*—not filed—at least 79 days before an election and that the Board timely adopted the referendum when it voted on August 11, 2022, to approve the resolution to place it on the ballot. The Election Commission thus argues that the "*nunc pro tunc*" notation is irrelevant because the referendum was timely adopted.

¶ 37     The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, which is best indicated by the statutory language, given its plain and ordinary meaning. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 52. We view the statute as a whole and, therefore, do not construe words and phrases in isolation but relative to other pertinent statutory provisions. *Cooke*, 2021 IL 125386, ¶ 52. Each word should be given meaning, if possible, as no part of a statute should be rendered superfluous. *Cooke*, 2021 IL 125386, ¶ 52.

¶ 38     Section 28-2(c) of the Election Code states:

"Resolutions or ordinances of governing boards of political subdivisions which initiate the submission of public questions pursuant to law must be adopted not less than 79 days before a regularly scheduled election to be eligible for submission on the ballot at such election." 10 ILCS 5/28-2(c) (West 2020).

The plain language of section 28-2(c) requires only that a resolution approving the placement of a referendum on the ballot be "adopted" no fewer than 79 days before an election. On appeal, however, plaintiffs argue that the term "adopted" requires the referendum to be "filed" with the Election Commission. They explain that, unlike Peoria County, many Illinois counties charge the county clerk, who is responsible for keeping the records and minutes of the county board, with the duty of holding elections. Plaintiffs assert that, in such counties, when a county board "approves a referendum that vote is filed with the election authority (the Clerk) in that moment. Thus 'adoption' includes both the vote and the submission to the Clerk." According to plaintiffs, because Peoria County "create[d] an Election Commission to conduct elections," which does not attend Board meetings to take minutes and keep records, the Election Commission "has no way of knowing if the Board wants to submit a question on the ballot unless the Board files a resolution with the [Election] Commission." Thus, plaintiffs conclude, "adopt" must also include the act of filing the referendum with the Election Commission, and because the Board did not do so in accordance with section 28-2(c)'s timing requirement, the referendum was untimely. This argument misses the mark.

¶ 39 Although plaintiffs equate "adopt" and "file," the Election Code treats those terms distinctly. See, *e.g.*, 10 ILCS 5/28-2(d) (West 2020) (noting no petition, resolution, or ordinance initiating the submission of a public question may specify such submission after the date on which it is "filed or adopted, as the case may be"); 10 ILCS 5/28-1 (West 2020) ("If more than 3

propositions are timely initiated or certified for submission at an election with respect to a political subdivision, the first 3 validly initiated, by the filing of a petition or by the adoption of a resolution or ordinance of a political subdivision, as the case may be, shall be printed on the ballot and submitted at that election."). Plaintiffs have advanced no reason to depart from the standard rules of statutory interpretation, and we cannot render either "adoption" or "filing" meaningless by conflating the two terms. See *Cooke*, 2021 IL 125386, ¶ 52.

¶ 40        Plaintiffs also argue that, because section 28-2(c) specifically refers to the submission of public questions "pursuant to law," the Board was required to comply with section 5-1005.5 of the Counties Code (55 ILCS 5/5-1005.5 (West 2020)). Section 5-1005.5 requires a county board that has "authorize[d] an advisory question of public policy to be placed on the ballot" to "certify the question to the proper election authority, which must submit the question at an election in accordance with the Election Code." 55 ILCS 5/5-1005.5 (West 2020). According to plaintiffs, because the referendum here was an "advisory question of public policy," the referendum question should have been certified to the Election Commission by August 22, 2022. However, importantly, this argument was not raised before the trial court, and it is raised for the first time on appeal. Additionally, plaintiffs provided no relevant authority to support their assertions that the referendum was an "advisory question of public policy" or that section 28-2 of the Election Code implicated section 5-1005.5 of the Counties Code. Accordingly, this specific argument is forfeited. See *Ballard*, 2011 IL App (4th) 100796, ¶¶ 40-41; *Hundley*, 2019 IL App (4th) 180380, ¶ 82.

¶ 41        The Board complied with the timing requirements of section 28-2 because it "adopted" the referendum on August 11, 2022, more than 79 days before the November 8 election, when it voted to approve the resolution to place the referendum on the ballot. See, *e.g.*,

*Feret v. Schillerstrom*, 363 Ill. App. 3d 534, 535-36 (2006) (noting board "voted to adopt a resolution" endorsing proposed expansion of airport). Plaintiffs, therefore, have not raised a fair question as to the likelihood of success.

¶ 42     Plaintiffs also claim that the referendum was "argumentative" and "slanted." They contend in their opening brief that the language of the question both "urg[ed] a vote in favor of the elimination of the office" and suggested, without proof, that eliminating the office would result in $150,000 in savings. Plaintiffs assert that the language, therefore, was "fundamentally unfair" and violated the free and equal clause of the Illinois Constitution (Ill. Const. 1970, art. III, § 3 ("All elections shall be free and equal.")). Plaintiffs further argue that "[i]n preparing the referendum ballot and conducting this election, public funds and resources [were] expended by the Election Commission to advocate a political position," which violated section 9-25.1(b) of the Election Code (10 ILCS 5/9-25.1(b) (West 2020) (prohibiting use of "public funds" to "urge any elector to vote for or against any candidate or proposition")).

¶ 43     Plaintiffs, however, cite no relevant authority to support their claims that (1) the language of the referendum was argumentative, and therefore, "fundamentally unfair," (2) the language violated section 9-25.1(b), or (3) even if the language was argumentative, injunctive relief is the appropriate remedy.

¶ 44     The sole case plaintiffs rely on, *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053 (7th Cir. 2016), is inapposite. *Jones* concerned the plaintiffs' claim that the Calumet City Council violated their first amendment right to free speech by placing three propositions on the November 2016 general election ballot in order to block the plaintiffs' own ballot proposition that, if approved, would impose a three-term mayoral term limit, thereby disqualifying the incumbent mayor from running for reelection. *Jones*, 842 F.3d at 1055-56; see also 10 ILCS

5/28-1 (West 2020) (providing that "not more than 3 public questions \*\*\* may be submitted to referendum with respect to a political subdivision at the same election," and if more than three are timely initiated or certified for submission at an election, the "first 3 validly initiated \*\*\* shall be printed on the ballot and submitted at that election"). One of the three propositions placed on the ballot by the Calumet City Council asked:

> "Shall [Calumet City] adopt the following term limits for the Office of Mayor \*\*\*: \*\*\* no person shall be eligible to seek election to, or hold the office of mayor where that person has held the elected office of either Mayor or Alderman of \*\*\* Calumet City for [four] or more consecutive full four (4)  year terms[?]" *Jones*, 842 F.3d at 1056.

If approved, that proposition would have allowed the three-term incumbent mayor to run for re-election while disqualifying an alderman who had declared his intention to run for mayor but had served at least four terms as alderman. *Jones*, 842 F.3d at 1056-57. The plaintiffs moved for a temporary restraining order or preliminary injunction, but the district court denied it, and the plaintiffs appealed. *Jones*, 842 F.3d at 1057.

¶ 45        Although the Seventh Circuit ultimately affirmed the district court, it acknowledged that the plaintiffs' "First Amendment argument well may succeed." *Jones*, 842 F.3d at 1059. The court explained that, while a state can impose requirements designed to avoid ballot clutter, those requirements could not be employed in a way that discriminates against particular advocates or viewpoints. *Jones*, 842 F.3d at 1059. The court noted that, by using the Election Code's so-called "Rule of Three" to interfere and advocate for its own ballot initiatives, Calumet City may have engaged in censorship by "tak[ing] sides" and limiting debate. (Internal quotation marks omitted.) *Jones*, 842 F.3d at 1059.

¶ 46        *Jones* did not address whether "argumentative" referenda language violated either the "free and fair" clause of the Illinois Constitution or section 9-25.1(b) of the Election Code. Thus, *Jones* does not support plaintiffs' arguments. Plaintiffs advance no other relevant authority in support of those claims. Thus, absent relevant authority to support their argument that the referendum language was impermissibly argumentative or slanted, plaintiffs have not raised a fair question that they would succeed on the merits.

¶ 47        In their reply brief, plaintiffs raise an argument, not presented to the trial court, that the referendum language violated the free and equal clause because it presented "two questions": (1) whether the office of auditor should be eliminated because an external auditor already exists and (2) whether the office of auditor should be eliminated because it would save $150,000. Plaintiffs contend that, when presented with the referendum language, one voter might want the office of auditor eliminated due to the monetary savings but not because an external auditor exists, while a different voter might want the office eliminated because an external auditor exists but not due to the monetary savings. Plaintiffs claim that, because the voters, despite their differing views, would both vote to approve the referendum, the referendum language "violates the free and equal clause because it combines questions to achieve the [Board's] preferred outcome." However, since this argument was not raised in the trial court and is raised for the first time on appeal in their reply brief, it is forfeited. *Ballard*, 2011 IL App (4th) 100796, ¶ 40; *Downers Grove*, 2022 IL App (2d) 210098, ¶ 93; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 48        Even if we were to consider plaintiffs' argument that the referendum violated the free and equal clause because it presented two questions, they would not have raised a fair question as to likelihood of success on the merits for the following reasons.

¶ 49 The free and equal clause is violated when separate and unrelated questions are combined in a single proposition on a ballot. *Coalition for Political Honesty v. State Board of Elections*, 83 Ill. 2d 236, 253-54 (1980). To be properly combined in a single proposition, separate questions must be reasonably related to a common objective in a workable manner. *Coalition*, 83 Ill. 2d at 255-56. However, this does not mean that separate questions are required any time that questions could be posed separately, as such a requirement would be "unworkable" since "[a]lmost any proposition can be broken into simpler questions." *Coalition*, 83 Ill. 2d at 258. An additional consideration is whether the questions are compatibly interrelated to provide a consistent and workable whole in the sense that reasonable voters can support the entire proposition. *Coalition*, 83 Ill. 2d at 260.

¶ 50 We find *Jones v. City of Calumet City*, 2017 IL App (1st) 170236, instructive. *Jones* concerned the same Calumet City referendum we referred to above, which asked whether those who had held the office of mayor or alderman for four or more consecutive terms should be ineligible to hold the office of mayor. *Jones*, 2017 IL App (1st) 170236, ¶ 4. The plaintiff, an alderman and mayoral candidate who became ineligible to run for mayor after voters approved the term limit referendum, argued, *inter alia*, that the referendum violated the free and equal clause. *Jones*, 2017 IL App (1st) 170236, ¶¶ 6, 10. Specifically, the plaintiff argued that the referendum asked two separate and distinct questions: (1) whether to limit mayoral candidates to individuals who had served fewer than four consecutive four-year terms as mayor and (2) whether to limit mayoral candidates to individuals who had served fewer than four consecutive four-year terms as alderman. *Jones*, 2017 IL App (1st) 170236, ¶ 10. The plaintiff contended that, because voters might wish to vote "yes" to the first question but "no" to the

second question, the questions should have been submitted separately. *Jones*, 2017 IL App (1st) 170236, ¶ 36.

¶ 51    The appellate court rejected that argument and held that the referendum did not run afoul of the free and equal clause. *Jones*, 2017 IL App (1st) 170236, ¶ 38. The court reasoned that the two questions in the referendum reasonably related to the common objective of providing a term limit and reasonable voters could—and did—support the entire proposition. *Jones*, 2017 IL App (1st) 170236, ¶ 38.

¶ 52    Here, even assuming that the referendum contained two questions, plaintiffs have given us no reason from which we could conclude that combining them was improper. "[I]t is only separate and *unrelated* questions which cannot be combined in a single proposition." (Emphasis in original.) *Coalition*, 83 Ill. 2d at 254. Like *Jones*, the two questions highlighted by plaintiffs were reasonably related to a common objective: eliminating the office of auditor. As in *Jones*, reasonable voters could—and did—support the entire proposition. Accordingly, plaintiffs could not have raised a fair question as to the likelihood of success on the merits based on this argument.

¶ 53    To obtain the relief plaintiffs sought, they were required to raise a fair question as to all four elements necessary for a preliminary injunction. Because plaintiffs forfeited their argument as to irreparable injury and failed to raise a fair question as to the likelihood of success on the merits, they are not entitled to a preliminary injunction. Accordingly, we hold that the trial court did not err in denying plaintiffs' second motion for preliminary injunction.

¶ 54                                III. CONCLUSION

¶ 55    For the reasons stated, we affirm the trial court's order denying plaintiffs' second motion for preliminary injunction.

¶ 56          Affirmed.

***Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 22-CH-28; the Hon. James A. Mack, Judge, presiding. |
| **Attorneys for Appellant:** | Justin M. Penn, of Hinshaw & Culbertson LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Jodi M. Hoos, State's Attorney, of Peoria (Jennie Cordis Boswell, Assistant State's Attorney, of counsel), for appellees. |