NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230760-U

NO. 4-23-0760

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MARK WAYNE VICARY, | ) | Appeal from the |
|     Petitioner-Appellant, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| KEVIN LEE WINDISH, | ) | No. 23OP857 |
|     Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Daniel M. Cordis, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Petitioner failed to establish that error occurred during proceedings that resulted in the trial court's denial of his request for a plenary stalking no contact order against respondent.

¶ 2  Petitioner, Mark Wayne Vicary, appeals *pro se* the trial court's denial of his request for a plenary stalking no contact order against respondent, Kevin Lee Windish. On appeal, petitioner argues the court erred by (1) denying his request for the appointment of counsel, (2) allowing respondent to obtain a mutual emergency stalking no contact order against him and his ex-wife "under nefarious pretenses," and (3) denying his request for a plenary order after refusing "to look at all the evidence" and misinterpreting relevant statutory language. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On June 20, 2023, petitioner filed a verified petition for a stalking no contact order

against respondent. He alleged that on June 17, 2023, respondent came to a "building located at 7800 N. McIntyre Road and began hitting the building, screaming, writing on the building[,] and demanding that [petitioner] come outside." Petitioner asserted that respondent destroyed one of his "trail cameras and threw the SD card," and that respondent became "hostile" when petitioner would not disclose the location of his ex-wife, Megan, whom respondent had "stalked for years." According to petitioner, respondent attempted to "break through the door numerous times." Petitioner alleged that both he and his children feared for their lives because respondent carried "a sawed off shot gun with him," which he referred to as " 'the judge.' " Petitioner also alleged respondent engaged in similar behavior at the same address on June 16, 2023, and that from May 1 to June 15, 2023, respondent placed petitioner, Megan, and petitioner's children "under constant surveillance."

¶ 5      The same day petitioner's verified petition was filed, the trial court issued an emergency stalking no contact order, prohibiting respondent from having contact with petitioner. The record reflects the emergency order was extended through the end of August 2023. During that time, petitioner filed several motions that were ultimately denied, including motions for a change of venue, substitution of judge for cause, and for court-appointed counsel.

¶ 6      On August 29, 2023, the trial court conducted a hearing in the matter and denied petitioner's request for a plenary stalking no contact order. The appellate record does not contain a transcript of the hearing.

¶ 7      This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9      On appeal, petitioner raises several challenges to the underlying proceedings. Respondent has elected not to file an appellee's brief. However, because "the record is simple and

the issues can be easily decided without the aid of the appellee's brief," we consider petitioner's claims of error. *Thomas v. Koe*, 395 Ill. App. 3d 570, 577, 924 N.E.2d 1093, 1099 (2009).

¶ 10                    A. Appointment of Counsel

¶ 11        Petitioner first contends the trial court erred by not appointing counsel to represent him in the underlying proceedings. He asserts section 35 of the Stalking No Contact Order Act (Act) (740 ILCS 21/35 (West 2022)) gave the court authority for such an action; however, the court denied him counsel "on numerous occasions" without providing reasons for its denials. Petitioner also contends the appointment of counsel was warranted because he "was a disabled senior over age 60 that had minimal knowledge of legal proceedings and how to present his evidence and question witnesses and Respondent." He maintains he was substantially harmed by the court's decision and that his due process rights were violated.

¶ 12        Initially, we find this issue forfeited based on petitioner's noncompliance with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which sets for the requirements for appellate court briefs. The rule provides that an appellant's brief must include a statement of facts that contains "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). It also must contain an argument section, which sets forth "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 13        "Reviewing courts are not depositories where litigants may dump the burden of argument and research," but, instead, "are entitled to have the issues clearly defined and a cohesive legal argument presented." *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶ 28, 225 N.E.3d 587. Arguments that are not properly developed and supported are forfeited on

review. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (Points not argued in the appellant's brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *People v. Aljohani*, 2022 IL 127037, ¶ 61, 211 N.E.3d 325 (stating Rule 341(h)(7) "requires an appellant to adequately develop his argument with citation of relevant authority" and that the failure to do so results in forfeiture of the issue); *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 43, 123 N.E.3d 1271 (stating an appellant's failure to properly cite to the record on appeal violates Rule 341(h)(7) and results in forfeiture of the appellant's argument). Further, "[t]he fact that a party appears *pro se* does not relieve that party from complying as nearly as possible to the Illinois Supreme Court Rules for practice before this court." *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8, 961 N.E.2d 475.

¶ 14    Here, petitioner's statement of facts does not reference or describe the circumstances surrounding any request by petitioner for the appointment of counsel or the trial court's ruling with respect to any such request. Thus, it fails to set forth facts necessary to an understanding of the case. Similarly, petitioner's argument contains no citation to the appellate record to support any of his factual assertions. Also, although petitioner cited a relevant section of the Act to support his claim, he otherwise failed to support his contentions regarding the appropriate standard of review and the alleged violation of his due process rights with citations to any relevant legal authority. Petitioner's argument is conclusory and not sufficiently developed, and we deem it forfeited.

¶ 15    Additionally, even if we were to disregard petitioner's forfeiture of the issue, we would find no error by the trial court. The Act provides that "[t]he court *may* appoint counsel to represent the petitioner if the respondent is represented by counsel." (Emphasis added.) 740 ILCS 21/35 (West 2022). The use of the word "may" in section 35 shows that the trial court has

discretion regarding whether to appoint counsel in a particular case. *Krautsack v. Anderson*, 223 Ill. 2d 541, 554, 861 N.E.2d 633, 643 (2006) (stating "the word 'may' ordinarily connotes discretion"). The trial court's discretionary decisions are reviewed for an abuse of discretion. *Buckner v. Causey*, 311 Ill. App. 3d 139, 150, 724 N.E.2d 95, 105 (1999) (finding use of the word "may" signaled a legislative intent to vest the trial court with discretion to act, and that its decision would not be reversed on review absent an abuse of discretion).

¶ 16 In this case, the record shows that on August 21, 2023, petitioner filed a motion for court-appointed counsel under section 35 of the Act. He argued respondent was represented by counsel and that he would "be at a great disadvantage without a court appointed attorney" due to his "lack of knowledge within the court system and his ability to present and enter evidence onto the record." Petitioner further asserted that he was "considered elderly under the law" and at a great risk of suffering further stalking and abuse from respondent.

¶ 17 The same day, the trial court conducted a hearing and addressed petitioner's motion. Petitioner argued that because respondent was represented by counsel, section 35 of the Act permitted the court to appoint counsel to represent him. The court denied the motion, stating as follows:

> "Yeah, I wouldn't do that under the circumstances, [petitioner]. I just wouldn't.
>
> If there was a red flag in the case, if I thought, maybe, somebody was a disabled adult or there was a minor or something like that, I would be more likely to do that, but just under the circumstances of this case and these allegations ***. I would exercise my discretion not to do that."

¶ 18 Contrary to petitioner's suggestion on appeal, the trial court provided its reasoning

for its decision. Petitioner does not argue that the court abused its discretion, and nothing in the record supports such a finding. Under the circumstances presented, we find the court committed no error in denying petitioner's request for the appointment of counsel.

¶ 19                              B. Mutual Emergency Orders

¶ 20          Petitioner next argues that the trial court erred by allowing respondent to obtain, "under nefarious pretenses," an emergency stalking no contact order against petitioner and Megan. Specifically, he contends that mutual stalking no contact orders are prohibited by the Act.

¶ 21          As petitioner argues, section 85 of the Act states as follows: "Mutual stalking no contact orders are prohibited. Correlative separate orders undermine the purposes of this Act. If separate orders are sought, both must comply with all provisions of this Act." 740 ILCS 21/85 (West 2022). Again, however, petitioner has failed to cite any portion of the appellate record to support his factual assertion that the trial court entered mutual stalking no contact orders during the underlying proceedings. Moreover, the record presented fails to reflect the entry of any such orders, showing only the entry of an emergency stalking no contact order entered against respondent at petitioner's request on June 20, 2023. Accordingly, petitioner's claim is unsupported and lacks merit.

¶ 22                     C. Denial of Plenary Stalking No Contact Order

¶ 23          Finally, petitioner argues the trial court erred by denying his request for a plenary stalking no contact order. He contends the court refused "to look at all the evidence" and misinterpreted the Act's language.

¶ 24          The Act provides a civil remedy for victims of stalking. *Id.* § 5. A petitioner must prove stalking by a preponderance of the evidence. *Id.* § 30(a). Further, the trial court's decision regarding whether to issue a stalking no contact order will not be reversed unless it is against the

manifest weight of the evidence. *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12, 36 N.E.3d 344 (stating the trial court's decision to issue a stalking no contact would not be reversed unless it was against the manifest weight of the evidence); *Best v. Best*, 223 Ill. 2d 342, 349-50, 860 N.E.2d 240, 244 (2006) (stating all findings made under the preponderance standard are reviewed under the manifest weight standard).

¶ 25        Here, the record shows that following a hearing on August 29, 2023, the trial court denied petitioner's request for a plenary stalking no contact order. However, the record on appeal contains no transcript of that hearing. We note that

> "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984).

Any doubts which may arise from the incompleteness of the record will be resolved against the appellant. *Id.* at 392.

¶ 26        Here, the appellate record does not show what occurred during the pertinent hearing on August 29, 2023, including the evidence presented at the hearing, the trial court's evidentiary rulings, or the basis for any of its determinations. Because petitioner failed to supply a complete record, we presume the court's decisions conformed to law and had sufficient factual bases and find petitioner has failed to demonstrate the occurrence of any error below.

¶ 27                                III. CONCLUSION

¶ 28        For the reasons stated, we affirm the trial court's judgment.

¶ 29        Affirmed.