NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241267-U

NO. 4-24-1267

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Ogle County |
| MICHAEL N. THORNHILL, | ) | No. 24CM71 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Anthony W. Peska, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding (1) the trial court had jurisdiction over defendant, (2) defendant was not denied the right to be present at his jury trial, (3) the court's sentencing order is not void *ab initio*, and (4) defendant forfeited all other arguments by failing to develop them on appeal.

¶ 2    Defendant, Michael N. Thornhill, appeals following his conviction for resisting a peace officer (720 ILCS 5/31-1(a) (West 2022)). On September 12, 2024, the trial court sentenced defendant to four days in jail and imposed a minimum fine and costs. On appeal, defendant argues his conviction and sentence should be vacated because: (1) the trial court did not have jurisdiction over him, (2) he was denied the right to be present at his jury trial, (3) the charging document was invalid, (4) the sentencing order is void *ab initio*, and (5) the record "contradicts the named defendant's identity *** undermining the validity of the court's actions." We affirm.

¶ 3                            I. BACKGROUND

¶ 4         On June 27, 2024, the State charged defendant with resisting a peace officer (*id.*).
At defendant's arraignment, defendant identified himself as "Michael Norman of the Thornhill
family, the beneficiary of the trust Michael Norman Thornhill." The trial court admonished
defendant on the charge, possible penalties, his right to counsel, and his right to a jury or bench
trial. Despite the court providing these admonishments, defendant refused to acknowledge whether
he understood or wished to have an attorney appointed to represent him. Due to defendant's
refusals, the court did not appoint counsel.

¶ 5         The trial court held two separate pretrial hearings in August and September 2024.
At each hearing, defendant filed multiple *pro se* motions, which were all denied by the court
following argument by the parties. At the conclusion of the September 12 pretrial hearing, the
following exchange occurred between the court and defendant:

> "THE COURT: Mr. Thornhill, do you stand ready for trial?
>
> THE DEFENDANT: Ready for trial."

¶ 6                             A. Jury Trial

¶ 7         Defendant appeared *pro se* for his jury trial. Before jury selection, the trial court
and defendant had the following discussion about defendant's preferred name:

> "THE COURT: When I address and introduce everyone to the jury, I just
>
> want to make sure I do so with proper names. So is it Michael Thornhill? Is that an
>
> appropriate name for you, sir?
>
> THE DEFENDANT: Divine Bindu is an appropriate name for me."

The court then moved on to other matters. During jury selection, the court referred to defendant as
"Michael Thornhill," and defendant did not object or correct the court. Defendant, *pro se*, actively

participated in jury selection; he questioned the panels and utilized multiple strikes to remove potential jurors.

¶ 8                                    1. *Testimony of Adam Witt*

¶ 9            Officer Adam Witt, a patrol officer for the City of Rochelle Police Department, was dispatched to the Rochelle Municipal Utilities Building on June 12, 2024. Upon arrival, Officer Witt saw an individual in the lobby of the building. After receiving a photocopy of a state identification card, Officer Witt identified this individual as defendant. The identification card had a photograph of defendant and the name "Michael Thornhill." Officer Witt then submitted defendant's information through dispatch and learned defendant had two warrants for his arrest. When Officer Witt advised defendant of the warrants, "[defendant] was verbally combative" and denied having warrants. Officer Matthew Wittenberg subsequently arrived on scene to assist, and officers managed to secure defendant in handcuffs. The officers attempted to escort defendant from the building, and defendant "became limp" and forced officers to carry him. While officers carried defendant out of the building, "[defendant] wrapped his legs around Officer Wittenberg's legs" and refused to let go, despite multiple commands to do so by the officers. Defendant continued to resist until officers secured him in the back of a squad car. Video from Officer Witt's body-worn camera was admitted without objection and played for the jury. Officer Witt identified defendant as the individual in the video.

¶ 10                                   2. *Testimony of Angel Rivera*

¶ 11           Officer Angel Rivera, a patrol officer with the City of Rochelle Police Department, was dispatched to the Rochelle Municipal Utilities Building on June 12, 2024. When Officer Rivera arrived, Officer Witt was already present. Officer Rivera saw an individual seated in a chair in the lobby. He identified this individual as defendant, whose name was Michael Thornhill.

Officer Witt informed defendant he had a warrant for his arrest and requested defendant stand up. While Officer Witt was speaking with defendant, Officer Wittenberg arrived on scene to assist. Defendant refused to stand up, but officers were eventually able to handcuff him while he was seated in the chair. When officers attempted to stand defendant up, defendant went limp and the officers had to carry him out of the building. While officers carried defendant out of the building, defendant wrapped his legs around Officer Wittenberg's legs.

¶ 12   Following Officer Rivera's testimony, the State rested.

¶ 13   3. *Testimony of Defendant*

¶ 14   Defendant provided narrative testimony regarding the events of June 12, 2024. When officers told him he was under arrest, he asked to see the warrant and the officers refused to show him a copy. He also told officers "his name is not Michael; he does not go by that name, and that is not his name." Defendant denied that his body went limp when officers stood him up out of the chair. When officers carried him out of the building, he lifted his legs up to prevent his shoes from getting scuffed. During his arrest, the pain from being handcuffed caused him to be "incoherent to what officers were saying." Once he realized his legs were wrapped around Officer Wittenberg's, he complied and unwrapped his legs. According to defendant, he did not resist arrest because he did not use any physical force against the officers, did not run, and did not fight back.

¶ 15   On cross-examination, the following exchange occurred between the State and defendant:

> "Q. You do not recall if that's you in the video or not, sir?
>
> A. That looks like Bindu in the video.
>
> Q. Bindu?
>
> A. That does not look like me.

Q. Okay. How do you spell Bindu?

A. B-i-n-d-u.

Q. What is the name that appears on the birth certificate issued to you?

A. It is Michael Norman?

Q. And Michael is the first name?

A. I'm sure that is the first name, yes.

Q. And Norman is the middle name, correct?

A. Norman is the last name.

Q. Okay. And your family name is Thornhill, correct?

A. Yes.

Q. So your full name is Michael Norman Thornhill, correct?

A. No."

¶ 16        After defendant's narrative testimony, the defense rested.

¶ 17                    4. *Jury Instruction Conference and Verdict*

¶ 18        During the jury instruction conference, defendant actively participated; he proposed jury instructions and requested modifications to the State's proposed jury instructions. The trial court made modifications to two of the State's proposed instructions based on defendant's requests but did not allow any of defendant's proposed instructions because the information in his proposed instructions was already included in the Illinois Pattern Jury Instructions being given. Following deliberations, the jury found defendant guilty of resisting a peace officer. The court set the case for sentencing and revoked defendant's bond so he would receive credit for any days served in custody at sentencing.

¶ 19                                    B. Sentencing

¶ 20          When the trial court attempted to begin defendant's sentencing hearing, defendant refused to acknowledge his name was Michael Thornhill, leading to the following colloquy between the court and defendant:

"THE DEFENDANT: I am known as Divine Bindu, attorney of fact for Michael Thornhill.

* * *

THE COURT: All right. Are you Mr. Thornhill or no?

THE DEFENDANT: I am known as Divine Bindu, attorney of fact for Michael Thornhill. Who are you today, Judge?

* * *

THE COURT: All right. You can take Mr. Thornhill back in holding until he's ready to—

THE DEFENDANT: I'm going to get my stuff and all my documents, please, before you rush me. Thank you.

THE COURT: Mr. Thornhill, I'm happy to call your case and take this up today and as soon as possible, as soon as you're ready. Are you ready?

THE DEFENDANT: I don't know what you're talking about. I asked you a question. I did not get any questions answered. I was sitting down. I had my papers out. I don't know what you—what more do you want from me.

THE COURT: Mr. Thornhill, are you ready to proceed with your sentencing or no?

THE DEFENDANT: I am ready to get this case matter over with if you're

ready to allow me to.

* * *

THE COURT: Are you Michael Thornhill?

THE DEFENDANT: May I sit down to address these questions?

THE COURT: You can answer your questions from right there, sir.

THE DEFENDANT: I am known as Divine Bindu. I have paperwork. I have filed my own cases. I have filed my own—everything I just did on the record. We can sit down and talk about it if you would like to. I am ready to get this over with. Like I said, I told the state's attorney the same thing. I looked over the papers she just furnished to me today while I was in holding. I was under the impression we could get this over and done with.

THE COURT: We can.

THE DEFENDANT: If not, I'll go back to my holding cell.

THE COURT: I agree, Mr. Thornhill, we can. But we did a full trial on Monday. I think that you did a good job representing yourself. That came to a conclusion. And now today you're telling me you're somebody else.

THE DEFENDANT: I don't remember—I don't recall having a trial Monday. But if we can sit down and speak this out, we can get this over and done with, I'm more than willing. That's totally up to you, Judge.

THE COURT: Are you Michael Thornhill?

THE DEFENDANT: I am known as Divine Bindu. I'm in here under the name Michael Thornhill, if that's what you're asking.

* * *

THE COURT: Are you Michael Thornhill?

THE DEFENDANT: That's my assumed name.

THE COURT: So you are Michael Thornhill?

THE DEFENDANT: That is my assumed name.

THE COURT: Yes?

THE DEFENDANT: My assumed name is Michael Thornhill.

THE COURT: So yes?

THE DEFENDANT: I am known as Divine Bindu.

THE COURT: You may know yourself as that, but your name is Michael Thornhill, yes?

THE DEFENDANT: My assumed name is Michael Thornhill, yes."

¶ 21 The parties then advised the trial court there was a "global resolution," which included an agreed sentence in this case, along with a negotiated plea in two unrelated cases. The State indicated the agreed sentence in this case was four days in jail with credit for time served, along with the imposition of a minimum fine and costs. Defendant acknowledged this was the agreement and stated he wished to enter into the agreement. When defendant signed the "Sentencing & Evidence Disposition Order" and "Financial Sentencing Order," he signed "X.C." on the lines marked "defendant." Because of this, the State made the following request:

"[THE STATE]: Judge, the State would like to make a record the defendant is signing initials that are not in any way connected to the legal name.

THE DEFENDANT: That's how my signature is.

THE COURT: I think the law establishes that anything that you put down can be your signature, so Mr. Thornhill's signature is going to be as it's reflected.

I'm sitting here. He's signing them in open court. I'll review them. And that will be his signature."

The court concurred in the global resolution and sentenced defendant to four days in jail with credit for time served and imposed a minimum fine and costs.

¶ 22     This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24     On appeal, defendant raises the following arguments: (1) the trial court did not have jurisdiction over him, (2) he was denied the right to be present at his jury trial, (3) the charging document was invalid, (4) the sentencing order is void *ab initio*, and (5) the record "contradicts the named defendant's identity *** undermining the validity of the court's actions."

¶ 25                          A. Forfeiture of Claims

¶ 26     At the outset, we note the State requests this court find all of defendant's claims forfeited based on defendant's noncompliance with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Rule 341(h)(7) requires an appellant brief contain an argument section, "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). These requirements are imperative because "[r]eviewing courts are not depositories where litigants may dump the burden of argument and research; courts are entitled to have the issues clearly defined and a cohesive legal argument presented." *Alms v. Peoria County Election Commission*, 2022 IL App (4th) 220976, ¶ 28. "The failure to assert a well-reasoned argument supported by legal authority is a violation of Rule 341(h)(7) resulting in forfeiture." *People v. Ivanchuk*, 2025 IL App (4th) 241230, ¶ 43.

¶ 27     Here, we find defendant has forfeited his arguments regarding the validity of the

charging document and the record contradicting "the named defendant's identity." Defendant failed to provide any cohesive arguments or cite any authority to support these contentions. Instead, defendant makes baseless conclusory statements with no legal support or validity. As a result, under Rule 341(h)(7), defendant has forfeited those two arguments.

¶ 28 We recognize defendant is representing himself on appeal *pro se*, as he did during the proceedings in the trial court. However, "a *pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants." (Internal quotation marks omitted.) *People v. Adams*, 318 Ill. App. 3d 539, 542 (2001). "[T]he procedural rules governing the content and form of appellate briefs are mandatory and not suggestions." *Litwin v. County of La Salle*, 2021 IL App (3d) 200410, ¶ 3. A *pro se* appellant is not excused from following the requirements of Rule 341(h)(7). *Id.* Despite finding two of defendant's arguments forfeited, we will address defendant's remaining arguments.

¶ 29 B. Trial Court's Jurisdiction

¶ 30 "Jurisdiction is most commonly understood as consisting of two elements: subject matter jurisdiction and personal jurisdiction." *People v. Castleberry*, 2015 IL 116916, ¶ 12. "Subject matter jurisdiction refers to the court's power to hear and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted.) *In re M.W.*, 232 Ill. 2d 408, 415 (2009). "A circuit court has subject matter jurisdiction over criminal charges alleging the existence of a justiciable matter under the Criminal Code [of 2012] (720 ILCS 5/1-1 *et seq.* (West 2010))." *People v. Davis*, 2021 IL App (4th) 200456-U, ¶ 17. "Personal jurisdiction refers to the court's power to bring a person into its adjudicative process." (Internal quotation marks omitted.) *Castleberry*, 2015 IL 116916, ¶ 12. In a criminal case, "[a] criminal defendant confers personal jurisdiction on the trial court when he appears personally before it." *People v.*

*Speed*, 318 Ill. App. 3d 910, 915 (2001).

¶ 31 In this case, we find the trial court had both subject matter and personal jurisdiction over defendant. The court had subject matter jurisdiction over defendant because defendant was charged with resisting a peace officer, which is a "criminal [charge] alleging the existence of a justiciable matter under the Criminal Code [of 2012]." *Davis*, 2021 IL App (4th) 200456-U, ¶ 17. Personal jurisdiction was established when defendant personally appeared in court at his arraignment on July 8, 2024. Defendant asserts personal jurisdiction did not exist because he was not properly served with notice. However, defendant's argument is incorrect because "formal service is not required in criminal cases. In a criminal case, a trial court obtains personal jurisdiction over a defendant when he appears before it." *People v. Brown*, 2024 IL App (5th) 230647-U, ¶ 18. Here, defendant's appearance in court at his arraignment was sufficient to confer personal jurisdiction over him. We note that although defendant denied his identity on several occasions, he was identified in open court by witnesses as Michael Thornhill. Furthermore, defendant acknowledged multiple times that his name was Michael Thornhill. Accordingly, we find the trial court had personal jurisdiction over defendant.

¶ 32 C. Denial of Right to be Present

¶ 33 "The right to be present is not an express right under the United States Constitution, but is implied, arising from the due process clause of the fourteenth amendment [(U.S. Const., amend. XIV)]." *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002). In addition, "article I, section 8 of the Illinois Constitution [(Ill. Const. 1970, art. I, § 8)] grants criminal defendants the express right 'to appear and defend in person and by counsel.' " *People v. Brown*, 2023 IL 126852, ¶ 12. "Accordingly, both the federal constitution and our state constitution afford criminal defendants the general right to be present, not only at trial, but at all critical stages of the proceedings, from

arraignment to sentencing." (Internal quotation marks omitted.) *Brown*, 2023 IL 126852, ¶ 12.

¶ 34　　　　Defendant alleges his right to be present at his jury trial was violated. However, this argument is baseless because a review of the record belies defendant's contention. Defendant personally appeared at his trial; represented himself *pro se*; actively participated in *voir dire*, questioned witnesses, and proposed jury instructions; and testified on his own behalf. Consequently, we find defendant's argument he was denied the right to be present during his trial without merit.

¶ 35　　　　　　　　　　　D. Validity of Sentencing Order

¶ 36　　　　Defendant argues the sentencing order entered by the trial court bears a signature different from his "known name" and the order was "signed under duress," therefore the order is void. We find both arguments without merit.

¶ 37　　　　At defendant's sentencing hearing, the State specifically noted defendant signed the sentencing order with a name other than his own. To make the record clear, the trial court made the following statement: "I think the law establishes that anything that you put down can be your signature, so Mr. Thornhill's signature is going to be as it's reflected. I'm sitting here. He's signing them in open court. I'll review them. And that will be his signature." Based on the court's statement, the record is clear defendant personally signed the sentencing order in open court at his sentencing hearing. We appreciate the court's effort to make a clear record, which greatly assisted this court in its review of this issue.

¶ 38　　　　Defendant also contends the sentencing order is void because it was signed under duress. However, defendant fails to provide any argument or rationale to support his contention. Defendant simply makes the assertion the document was signed under duress. Moreover, a review of the record establishes this assertion is baseless. At the sentencing hearing, defendant advised

the trial court he wanted to enter into a negotiated sentencing agreement with the State and persisted in his desire to enter the agreement after the State recited the terms of the agreement in open court. Therefore, because defendant personally signed the sentencing order in open court and provided no argument or rationale as to how the order was signed under duress, we find the sentencing order is not void.

¶ 39                                    III. CONCLUSION

¶ 40            For the reasons stated, we affirm the trial court's judgment.

¶ 41            Affirmed.